May it please the court, my name is Eric Cartel and I represent the appellants, Dwight Mitchell and his children, and Stop CPS from Legally Kidnapping. We seek reversal of the lower court's decision because the public official's seizure of the children lacked lawful probable cause under the Eighth Circuit's 2018 decision in Finnegan. There was in this case a parental spanking of a naughty child's bottom. The police took the children to the police station. The Child Protection Service investigator interviewed the babysitter, the wife, and the children and ordered the seizure of the children which resulted in five months for two of the children and 22 months for the last. Mitchell and his children won the state court proceeding by dismissal and now they're proceeding for damages. This appeal has two aspects relating to Finnegan. This is important. In the post remand decision by Chief Judge P.K. Holmes, he wrote, the Fourth Amendment applies in the context of seizure of a child by a government agency during a civil child abuse or maltreatment proceeding. The Eighth Circuit decision means that there is now a 42 U.S.C. 1983 cause of action for seizing a child in a child abuse proceeding without probable cause. Now why is that important in this case? That decision came down after we filed our amended complaint, after we filed our response to the motion to dismiss. We informed the court prior to the hearing with the supplemental authorities letter about Finnegan. I argued at the hearing that Finnegan applied. You can look for example at page 18 of the transcript. Our briefs in this court cover Finnegan. Our reply brief covered Finnegan and now we're arguing based on Finnegan. That was a watershed case that occurred while this proceeding was ongoing. Now in our case, as I mentioned, there was a single act of physical discipline against one of the children, but three children were seized. The physical discipline, no transient pains and temporary marks. Now there's a dispute over the redness. The government says they're bruises. We say they're expanded capillaries. There was no welting, anything. The child reported no pain like, you know, sitting down or anything like that. The child did not complain about continuing pain. There was no neglect. The children were in care of a babysitter. There was no imminent threat. The parents were not at home. There's no past history of spanking according to the wife. No past history of child protection proceedings. No criminal history. Mr. Mitchell is an educated, affluent, African-American man. He's in sole custody of his children under family court order. The CPS investigator Borland classified Mitchell in the proceeding verbally as a black man unfit to be a parent because black families are too quick to spank their promised the ex-wife Campos that she would try to reunite her with the children, despite Campos being convicted, sentenced, jailed, and eventually deported to Spain for hiring a hitman to kill Dwight Mitchell as part of the family law proceeding and take the children to Spain. So that's who the Child Protection Services was trying to transfer custody to. There was five months of seizure of XM and Bryce Mitchell and 22 months of XM. Again, Mitchell won the state court proceeding. Finnegan provides the roadmap for standing. Injury? Here's what the chief judge in the Western District of Arkansas said post remand. The Stanley's plead a concrete and particularized constitutional injury as their children were removed from their custody allegedly without probable cause. That's our claim. Causation. Chief Judge Holmes. In that case, child abuse investigator Finnegan had a legal obligation to possess a reasonable suspicion of child abuse before ordering removal of the children. The Stanley's contend she failed to satisfy the standard but ordered the removal of the children nonetheless. On the pleadings, the injury is therefore directly traceable to Finnegan's conduct. That's exactly our pleading. Redressability? We're seeking damages. Qualified immunity is answered by Stanley B. Finnegan in the 8th Circuit decision. Basically, it says the 8th Circuit, to balance these competing interests, we have adopted the rule. That's a rule. That's a rule for all the district courts to follow. That when a state official pursuing a child abuse investigation takes an action which would otherwise unconsciously disrupt family integrity, he or she is entitled to qualified immunity if such action is properly founded upon a probable cause. And that, of course, is exactly the situation and the allegations here. So then, you ask, why would I say this is Stanley B. Finnegan on steroids? Well, if we're going to apply the seizure clause to child protection employees or seizing children for child abuse, it's not only that we have to have probable cause. That was Finnegan. On steroids means the probable cause has to be lawful. Probable cause legal standards have to be lawful. And so what we've done is reviewed the Minnesota statutes to see if Minnesota operates under a probable cause standard that's lawful. And let's begin with something simple. Like, what do, what's, is there an under-inclusiveness here with respect to spanking? Minnesota Statute 121A.582, subdivision 1, authorizes educators, teachers, and principals, quote, a teacher or school principal in exercising the person's lawful authority may use reasonable force when it's necessary under the circumstances to correct a child, to correct a student. So that's under-inclusive. So a parent or, I'm sorry, a teacher or a school principal can use force to correct a child, whereas a parent exercising the parent's lawful authority may use reasonable force when it's necessary under the circumstances to correct a child. Now normally, as you know, because these statutes involve fundamental rights, strict scrutiny, and has to be narrowly tailored to meet a compelling state interest, if it's under-inclusive like this, the state's compelling interest is doomed. They're done! You can't allow teachers to use reasonable force to correct students and have parents have their children seized for using the exact same force against their child. Counsel, I'm not addressing the merits of your argument, but can you address whether your clients have standing to make a facial challenge to these statutes given their residency and what seems to be a lack of immediate threat of enforcement of those statutes against your clients? Yes, with respect to the standing that's laid out in Finnegan, I had mentioned those points. So Mitchell has a damages claim, and just like the Stanley said, the Stanley's were suing Finnegan, a child protection worker. Mitchell's suing a child protection worker in Minnesota. We're all bound by an Eighth Circuit decision, and so the post-remand decision in Finnegan, written by Chief Judge Holmes, lays out the standing. Counsel, does your case turn on Finnegan? I mean, I didn't read that as the critical case in your complainer on appeal. I expected to have due process arguments and facial challenges, but I just want to confirm that Finnegan, is that what you win or lose on, whether or not Finnegan applies to this case? No, with respect to lawful probable cause, that all fits. How do we judge whether the probable cause legal standard is lawful? And we have to go back to the due process arguments and all of that. But Finnegan, our theories are complementary to Finnegan, but Finnegan is a world changer because it was the first time a U.S. Court of Appeals said there's a 1983 private cause of action against child protection services under the seizure clause. So the benefit of that, of course, is that you take these cases involving seizure of the parental relationship in all sorts of ways, but the lesson of Finnegan is the seizure cases aren't really important because they completely sever the relationship between the parent and the child. And so, back to the question from Judge Grotz, is that then the parents, of course, in the association, Minnesota parents, they want to know whether they can use a reasonable force against their teachers. And so then, quickly, we'll look at the statutes. And the problem with the statutes is they have to be read. And once you read them, you'll see what I'm talking about. In 260C.007, subdivision 5, they incorporate the elements of a number of crimes, including assault, battery, malicious punishment of a child. And then, when you look at it, and you go back to the criminal statute, you see that there's an affirmative defense that's allowed in criminal proceedings for a parent using reasonable force and disciplining a child. But then, it's very specific under the Child Protection Statute that those affirmative defenses are omitted. They're not allowed. So in Minnesota, you can have a seizure of a child for child abuse that's not criminal, but it's still a And so when we look further, and we reverse engineer this, let's look at something like assault in the fifth degree or malicious punishment of a child, those crimes. Basically, any pain, any fear caused in anyone can be criminal in that way. Now, the way the criminal proceedings handled is the parent has the affirmative defense, well, I was causing fear in the child because I didn't want him to run into the street and get hit by a car. But in the civil proceedings, those affirmative offenses are excluded. So seizure can occur for a parent raising any fear in a child, causing any pain to the child. All the other states in the Eighth Circuit don't deal with it this way. Basically, they're the same standards, both in the criminal law and in the civil proceeding. So what does this mean for the parents and the association is that, in answering Judge Gratz's question, can a parent do an ordinary spanking on a child today to discipline them like a teacher could? And the answer is, well, you're not criminally liable, but yeah, they can seize your kid, and here they did five in 23 months. And why it relates to Finnegan is that obviously the government hasn't met its probable clause requirement. If the legal standard used for probable clause is unconstitutional, the due process clause or any other provision in the Constitution, it all ties together. So we want to build on Finnegan. Finnegan is a good decision. And then I think also I would like to mention that the Minnesota Constitution and Minnesota's common law do not help here. You know, there are other states like the Supreme Court of Massachusetts has recently decided a common law privilege to spank children. Hawaii has interpreted its Constitution to protect the spanking of children. These are deep blue states who are saying, look, when you seize a child, you're breaking up a family. There's nothing about religiosity here. This is just practical. We have lots of single parents. When you seize a child on allegation of ordinary spanking, it's wrong, and you're causing a trauma. And that, of course, is recognized in the Finnegan case. Because Finnegan is saying, when the government wrongfully seizes a child lacking probable clause, there's damages. Now you go in the state courts of Minnesota, you raise that on child protection services proceeding. Well, counsel, you can't talk about the trauma created by separating a parent from a child. That's just our norm. And the norm exists because Finnegan hasn't been applied yet. I'd like to save the rest of my time for rebuttal. Thank you. May it please the Court. Your Honors, my name is Katherine Iverson Landrum, Assistant Attorney General for the state of Minnesota, and I represent the state public defender, Tanya Derby, and the Commissioner of the Minnesota Department of Human Services, Jody Harpstead, who is automatically substituted for the prior Commissioner. Counsel, on page 32 of your brief, you state, very serious allegations of physical abuse were lodged against Mitchell that caused the children's immediate removal. What were those allegations? Thank you, Your Honor. So at docket entry 8, paragraph 28, plaintiff admitted that he had spanked the child. At paragraph 90, there is an admission that there were bruising on the children. Mr. Mitchell had alleged that substantial bruising was caused by a skiing accident, but regardless, it's undisputed on the face of the complaint that there was significant bruising on the child. As a result, it is undisputed that Mr. Mitchell pleaded guilty via an Alford plea to the crime of malicious punishment of a child. And an Alford plea means that while he did not want to admit to the actual, whether to the, whether or not he would plead guilty or not to that particular allegation, but that he recognized that it was likely that if the case were brought before a jury, he would be convicted of the crime of malicious punishment of a child. Finally, the complaint is clear throughout that there were substantial allegations of long-standing physical abuse lodged against Mr. Mitchell by the That placed... Counsel, didn't the state know that those allegations had been shown to be disproven and made by someone who had hired a hitman to actually kill Mr. Mitchell? Your Honor, ultimately, Dakota County became aware of those other allegations, but it doesn't mean that there were substantial allegations of abuse, that you had essentially a he-said-she-said situation here with regard to these children. And under Minnesota's child protection statutes, the number one consideration is the best interests of the children. Well, let's let's take this chronologically. What was known at the time that the police came to the home while the parents were out, removed the children, what did they know at that time? Thank you, Your Honor, and that question might be better for the Dakota County defendants as well, so I don't want to cut too much in their time because my clients were not involved at that time. I think that's important as to why my clients are entitled to absolute quasi-judicial immunity in this case, but at that time, there was a call to the Dakota County Police that there had been a significant beating of a child. A significant beating or a spanking? A significant beating. He alleged that he had been beaten with a belt. That was the allegation that the police were made aware of, and as a result, Dakota County immediately removed those children based off that information at that time. And again, I'll leave it to Dakota County to address that issue because my clients were not involved. My individual clients, Your Honors, are entitled to absolute quasi-judicial immunity. They were both court-appointed in this case, not to advocate for Dakota County, not to advocate for Mr. Mitchell, but to assist the court in coming to a determination on the best interests of the children. And as a result, my individual clients, Derby and Trotsky, sir, are entitled to the absolutely robust immunity of absolute judicial immunity. But let's move to the facial constitutional claims, Your Honor. Counts 1 through 6, the District Court correctly dismissed those claims for lack of standing, and Your Honor had asked the question about standing. Plaintiff did not directly answer that question because there are no factual allegations in the complaint to provide standing for any plaintiff in this case. For prospective injunctive relief, claims 1 through 6 are facial, broad, facial constitutional challenges to various Minnesota statutes. Mr. Mitchell and his children do not live in Minnesota. As a result, they cannot establish that they are about, that they are under a certainly impending risk of future enforcement of those statutes against them. Similarly, the association does not have standing. So for any of their members has standing in an individual capacity to bring that claim. And in this case, the complaint alleges, and I quote, that the associations have had experiences with the child protection system, end quote. There is no discussion as to what those experiences were. There's no discussion as to how those experiences have anything to do with Minnesota statute. And they certainly don't say anything about a, quote, ordinary bottom spanking, that any association member engaged in an ordinary bottom spanking. And frankly, in the face of the complaint, Mr. Mitchell did not engage in an ordinary bottom spanking because that's not what the factual allegations that were being lodged at the time that the emergency petition was filed with the court. Counsel, due to time, I'm going to shift directions here. Do you represent Ms. Borland? I do not. Okay, who represents Ms. Borland? Ms. Borland is represented by the Dakota County Defendants, Your Honor. She is a social worker. With regard to standing, Your Honor, plaintiff has argued that he has standing because he is alleging damages in this case. And he's just talked exclusively, in my estimation, to count seven in the complaint. That is a, as applied, procedural due process claim. It is not alleged against the state. But the standing requirement is different, of course, for prospective injunctive relief rather than as applied claims. And the complaint is crystal clear that they are, in fact, as applied claims. And as a result, this court need not and absolutely should not address the merits of those claims because there simply is no jurisdiction. Now, despite the fact that there isn't any jurisdiction on those claims, I simply must respond to plaintiff's argument that Minnesota law prohibits reasonable and moderate physical discipline because that is absolutely a misconstruction of Minnesota law. Counsel, let me ask you about that. On page 20 of your brief, you state just that. Minnesota statutes most certainly do not prohibit reasonable spanking to correct the behavior of a child. Yet, on page 2 of your brief, you directly equate ordinary spanking with, quote, physical abuse. So which is it? Your Honor, I'm not exactly sure what plaintiff means by him saying what an ordinary spanking is. What Minnesota law expressly allows in both the CHIPS statute, so the Child Protection statutes, as well as the criminal statutes, allow in 626.556 subdivision 2K that the definition of physical abuse does not include reasonable and moderate physical discipline. Now, that is repeated in Minnesota statutes 609.379 and 609.06. So, to the extent that plaintiff is saying that somehow the statutes are under-inclusive because teachers are also allowed to use moderate physical discipline, they're the same. They're allowed to use the same level of discipline. But even more importantly, Your Honor, we cited a Minnesota Supreme Court case, In Re. Welfare of Children of NF, which is a Minnesota Supreme Court case from 2008 that expressly held, looking at the statutory provisions that we provided, that Minnesota law does not prohibit reasonable and moderate physical discipline. Does that include spanking? Would that include a spanking? Yes, I think it would, Your Honor, particularly if it doesn't result in injury. So, would you agree that page 2 of your brief is incorrect? Your Honor, I have certainly apologized to the extent that you disagree with the phrasing in my briefing. A spanking that does not result in any injury to the child is not discipline or is not abuse under Minnesota law. And importantly, that's not what was alleged against Mr. Mitchell in this case. It was substantially worse. And this point, I see my time is up. Unless there are further questions, I will sit down. Thank you. Mr. Topka, when you're ready. May it please the Court. Counsel, my name is William Topka and I represent the and I'm going to address right off the bat this issue of probable cause. I would like to pull the Court back a little bit because we're not arguing today about the merits of plaintiff's case. We're arguing about what's in the complaint and whether the complaint states a claim under Iqbal and Tambly. So, if we look at the complaint, what does the complaint say? It talks about bruising. It talks about redness. It talks about other allegations of abuse. This is what the county knew at the time that the children were removed from Mr. Mitchell's home. I would like to state that the county didn't remove the children. The police officers did upon the call. So, if we're talking about probable cause here, that's what the complaint states. That's what we have to go by. And if we're arguing about whether or not the county is entitled to discretionary immunity under Finnegan, it first has to have probable cause. We think that the complaint with the allegations that are in it states probable cause. And so with that, I would like to focus on the immunity defenses that Dakota County appellees have. And there are three. Sovereign immunity, official immunity, and absolute immunity. So, when we're talking about sovereign immunity, we're talking about discretionary acts that balance public policy considerations, economic and social considerations. And if you look at the complaint, the complaint alleges essentially all discretionary acts against the Dakota County appellees. They complain about the balancing of evidence, the weighing of evidence, the filing of petitions, the removal of children. All of these decisions that the Dakota County appellees made were all based upon an analysis. What are the facts that we know? What's the law? And then how do we apply the facts to the law? That is, at its very core, discretion. And so we've got allegations in the complaint of discretionary acts. Under the sovereign immunity, there has to be a balancing of public policy considerations. And we propose that those policy considerations exist here. On the one hand, you have Mr. Mitchell, who is alleging that he has a right to bring up his child as he so chooses. So you've got that policy consideration. But then you've got the state's policy consideration of the welfare of the child. When you've got these reports of bruising, hitting a child with a belt, redness, all of these things. So the Dakota County appellees are weighing all of these things when they're making their decisions on what to do. And that is the very act of discretion. That's what their job is, to weigh these facts and decide what to do with them. And if you start having lawsuits that are supposing to second guess these decisions, your honors can understand what's going to happen. There's going to be multiplicity of lawsuits. These officials won't be able to do their jobs without fear of suit. And so that's why immunity exists. Counsel, let's go beyond the immediate removal of the children to the filing of the CHIPS proceeding, which I believe was by Ms. Borland, is that correct? Yes, your honor. And I'd like to have you tell me what she knew at the time she filed that, which I believe was on February 20th. Because it was my understanding that on February 18th, the county was aware of all the facts regarding Ms. Campos. That is true, your honor. We were aware of all the facts. That's an extensive history, right? That's not in dispute. But all of these factors come into play. Sometimes where there's smoke, there's fire. And you have to take these things into consideration. You just can't offhandedly dismiss them simply because they come from a person who is of less than a credible person. Is it true that a court in New Jersey had told her to stop making false child abuse accusations? I am unaware of that being in the complaint, your honor. If that's what the complaint says, that's what the complaint says. And this is what I keep coming back to, is that what does the complaint say? We haven't gone through discovery. Nobody's deposition's been taken. We don't have a record one way or the other. All we have are the allegations in the complaint. So there's a lot of allegations, a lot of talking outside of what's actually in those 200 plus paragraphs. And so I think at the end of the day, we really need to come back and say, what does the complaint allege? What is the law? And how does that work out, at least at this particular stage? And unless the court has any additional questions, I have no further comments. You're free to leave or the statutes. And the Attorney General's office has represented something which is not accurate. So the Attorney General referenced the statute section 609.379 and it states that only applies to criminal proceedings, including 260C.045, but not to civil proceedings such as 260C.007, which is a definition of child abuse and and CHIPS. So let me read the statute to you. This section applies to section 260B.425, 260C.425, 609.255, 609.376, 609.378, and 609.376. So it doesn't mention 260C.007. So that should be taken back. Secondly, the reference was made to 626.556, subdivision 2. And it has in it, this is the Notice Statute, the Mandatory Porter Statute, a reasonable force defense for parents. But our argument is that in the definition of child abuse, there's an or is really important. So child abuse means an act. This is subdivision 5, 260C.007. Child abuse means an act that involves a minor victim that, and we'll call this Clause 1, constitutes a violation of these sections. These are the criminal statutes I refer to, including battery, assault, and malicious punishment of a child. Then it says or, and this is Clause 2, that is physical or sexual abuse as defined in Section 626.556, subdivision 2. That's what the Assistant Attorney General said, my friend. She came here and said that this definition of child abuse is modified by 626.556, subdivision 2, but in the definition of child abuse, there's an or, and there are three clauses. And 626.556, subdivision 2 only affects the second clause. So if the criminal defenses aren't incorporated in 260C.007, and there's an or here, that means that child abuse includes such things as assault and battery. And when you look at those statutes, that could be fear, including a modest pain. One last point. Your time is up. All right, thank you, Judge. Thank you. Is there anything else? You're free to leave. Thank you very much for your briefing and your argument in the case. It was very helpful. Is there anything further on the calendar? No, Your Honor. We will stand in recess until 9 a.m. tomorrow morning. Thank you. Thank you, Your Honor. Oh, oh, oh. Sorry. Oh. I didn't know if she was here. Someone is here. I don't know if this is on. All right. It's a shame. It's a shame.